OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law*, Public purpose, Home Rule Amendment, Delegation
    of powers, Opinions of the Justices, Environmental protection. *Har-*
    *bors. Real property*, Littoral property. *Due process of Law*, Com-
    monwealth's interest in tidelands. *Supreme Judicial Court*, Opinions
    of the Justices. *Public Land.*

On June 18, 1981, the Justices submitted the following
answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit these answers to the questions set forth in an order
adopted by the Senate on February 5, 1981, and transmit-
ted to us on February 13, 1981. The order recites that there
is pending before the General Court a bill entitled "An Act
relative to title to tidelands lying within the city of Boston
and bordering on or near the waters of the commonwealth."
(House No. 658).

House No. 658 proposes a new chapter of the General
Laws, G. L. c. 91A, concerned with (a) the title, in rela-
tion to any vestigial rights of the Commonwealth, of record
owners of tidelands in the city of Boston lying landward of a
certain line, referred to as the 1980 Line, and (b) the
regulation of changes in or expansion of existing uses of tide-
lands in the city of Boston lying seaward of the 1980 Line.
Tidelands are defined, speaking in general terms, as areas
below primitive mean high tide. Section two of proposed
G. L. c. 91A would eliminate any vestigial rights of the
Commonwealth in tidelands in Boston lying landward of
the 1980 Line. Remaining sections of proposed G. L.
c. 91A provide a procedure by which a record owner of
tidelands in Boston lying seaward of the 1980 Line might
obtain a permit to change or expand an existing use or to
develop an undeveloped area.

The order transmitted to us asserts that grave doubt exists
as to the constitutionality of the bill if enacted into law and
propounds the following questions:

> "1. Would section one of said house bill, if enacted,
> cure title and eliminate any vestigial rights of the com-
> monwealth, whether by way of implied condition,
> public trust or otherwise, in and to any and all
> tidelands or submerged lands located within the city of
> Boston?
> "2. Would said section one of said house bill, if
> enacted, cure title and eliminate any vestigial rights of
> the commonwealth, whether by way of implied condi-
> tion, public trust or otherwise, in and to any and all

tidelands or submerged lands located within the city of Boston lying landward of the 1980 Line and

"a. filled by private or public entities or persons pursuant to general or specific legislation containing no express conditions restricting use; or

"b. filled by private or public upland landowners pursuant to authority contained in the Colonial Ordinance of 1641-1647 prior to the effective date of St. 1866, c. 149, requiring the licensing of any such fill; or

"c. filled pursuant to licenses granted by the Board of Harbor Commissioners or its successor agencies pursuant to St. 1866, c. 149, as amended and now in law as chapter ninety-one of the General Laws, either where such licenses contain no express language of condition or where there is express language of condition; or

"d. which have been both continuously filled and privately occupied for a period of twenty years beginning after the effective date of Revised Statutes, Chapter 119, Section 12 (effective April 30, 1836) and creating a twenty year statute of limitations affecting real estate interests of the commonwealth and ending before the effective date of St. 1867, c. 275 (effective May 27, 1867), and purporting to exempt interests of the commonwealth in lands below the line of primitive mean high water from the application of any statute of limitations; or

"e. filled by the commonwealth or one of its agencies or political subdivisions or bodies politic and corporate pursuant to the provisions of general or special legislation, and thereafter, conveyed to private landowners either for consideration or without consideration?

"3. Would said bill, if enacted into law, be in contravention of Section [one] of Article XIV of the Amendments to the Constitution of the United States, or Article X of Part the First of the Constitution of the

Commonwealth, guaranteeing due process and equal protection of the laws?

"4. Would said bill, if enacted into law, be in contravention of Article IV, of Section one, of Chapter one, of Part the second of the Constitution of the Commonwealth, as exceeding the power of the General Court to make all manner of wholesome and reasonable statutes?

"5. Would said bill, if enacted into law, require a two-thirds vote of both branches of the General Court [under] Article XCVII of the Articles of Amendment of the Constitution of the Commonwealth?

"6. Would the said bill, if enacted into law, be an unlawful delegation of legislative power and responsibility to regulate the public trust over certain tidelands in violation of Article XCVII of the Articles of Amendment, or Article XXX of Part the First of the Constitution of the Commonwealth?" [1]

Before discussing the specific questions that have been propounded to us, we shall analyze House No. 658 in light of the applicable principles of law. These principles are set forth in our reply to the Senate that we have delivered today with respect to questions propounded to us concerning Senate No. 1001. See *Opinion of the Justices, ante*

---

[1] We invited interested persons to file briefs by March 31, 1981. In response, briefs were filed by the Attorney General, the Bostonians for Leaving an Open Waterfront and the Boston Waterfront Neighborhood Association, the Committee on Civil Rights of the Friends of the Newburyport Waterfront, and the Conservation Law Foundation of New England, Inc.

Briefs related to substantially identical questions propounded to us with respect to a somewhat similar Senate bill were submitted by the Abstract Club, the Massachusetts Conveyancers' Association, and the Real Estate section of the Boston Bar Association, which are voluntary associations of members of the Bar of the Commonwealth, whose practices and professional interests are principally concerned with the law relating to real property, and the professional corporation of Rackemann, Sawyer & Brewster, which is engaged in the private practice of law in Boston, and a substantial portion of whose practice is devoted to the area of real property law.

895, 900-906 (1981), the portion under the heading "General Considerations."

*The Specific Provisions of House No. 658*

Section 1 of proposed G. L. c. 91A sets forth the following legislative findings: (1) the free transferability, marketability, and mortgageability of real estate in Boston is crucial; (2) the retention by the Commonwealth of title or vestigial rights, by other than express language in the instrument of transfer, would render such real estate unmarketable and incapable of development; (3) savings institutions as a matter of policy should principally invest in fee simple titles subject to no unreasonable conditions or exceptions; (4) the Commonwealth holds for the people in public trust and must safeguard certain legal rights in present and former littoral property; (5) as to any public trust rights in property landward of the 1980 Line taken for purposes enumerated in art. 97 of the Amendments to the Massachusetts Constitution, the property has ceased to be used for such purposes; (6) clouds on title arising from asserted vestigial interests of the Commonwealth in some or all of present or former littoral properties might, without legislative clarification, prevent development of the type which has aided in the economic revival of Boston and would stultify growth and further reduce the tax base of the city; (7) the public welfare would be best served by creating certainty of titles and by eliminating "any unexpressed, implied, imputed, or implicit rights or conditions retained by the commonwealth"; (8) the proposed act will eliminate the need for the public to examine documents not recorded in the registry of deeds as to vestigial rights of the Commonwealth and will eliminate the need for a succession of special acts dealing with individual properties; (9) the elimination of vestigial rights of the Commonwealth, its political subdivisions and agencies in such lands would best serve the present and future interest of the Commonwealth; and (10) any contrary, prior legislative declaration of public purpose is no longer in the best interests of the Commonwealth.

Section 2 of proposed G. L. c. 91A deals with tidelands lying landward of the 1980 Line. It provides that tidelands, as defined in proposed G. L. c. 91A, § 3, lying landward (within Boston) of the 1980 Line which have been or are hereafter filled pursuant to the express language of any applicable grant, legislation, or other instrument of the Commonwealth, its political subdivisions or agencies, are declared to be for the proper public purpose of promoting the commercial, industrial, residential, conservation, and recreational development of Boston. It further provides that "any vestigial rights of the commonwealth in the title to all such tidelands are hereby eliminated." [2]

A "public purpose" is defined by proposed § 3 to include all lawful land uses, provided that public trust rights are preserved and protected. [3] This definition does not expressly include within public purpose some of the considerations recited in the legislative findings paraphrased above from proposed § 1 of G. L. c. 91A. In our consideration of proposed § 2, we need not pause concerning this definition because § 2 deals with *proper* public purposes and declares all present uses landward of the 1980 Line to be proper. As to former flats and submerged land lying landward of the 1980 Line, we have no hesitancy in accepting the legislative conclusion that it is substantially in the public interest that such land be free from any claim of a public trust and any

---

[2] Vestigial rights are defined twice in § 3 of proposed G. L. c. 91A. The first definition is incomplete. In so far as a comparison is possible between the two definitions, it appears that they are not identical in substance. The first listed definition of vestigial rights refers to rights seaward of the 1980 Line and, therefore, is strictly inapplicable to the words in proposed § 2 which concern rights landward of the 1980 Line. This limitation of the definition to land seaward of the 1980 Line is particularly surprising because § 2 is the only operative section of proposed G. L. c. 91A in which the words "vestigial rights" are used.

[3] Proposed § 3 defines "public purpose" as follows: "'Public purpose', any commercial, industrial, business, residential [*sic*] conservation or other purpose for which any real estate has been, could now be, or may in the future be lawfully used pursuant to regulations or laws from time to time applicable in the city of Boston, provided, however, that public trust rights are preserved and protected."

other vestigial interest of the Commonwealth. Neither the public nor the Commonwealth has a continuing interest in these tidelands in the nature of a public trust of the character described in the *Boston Waterfront* case. See *Boston Waterfront Dev. Corp.* v. *Commonwealth,* 378 Mass. 629, 641-649 (1979).

Section 2 of proposed G. L. c. 91A purports to eliminate "any vestigial rights of the commonwealth" in the tidelands landward of the 1980 Line. It does not purport to eliminate the rights of particular individuals or any rights of the city of Boston. We cannot say what interests of the Commonwealth, if any, beyond public trust rights are intended to be eliminated by the enactment of proposed § 2. We would not regard an easement in favor of the Commonwealth or other right of the Commonwealth expressly stated in the governing instrument as a vestigial right within the reach of proposed § 2. The second definition of "vestigial rights" in House No. 658 includes rights created or implied "from the common law . . . by the commonwealth." We are in doubt as to the meaning of these words.[4] We conclude, nevertheless, that proposed § 2 properly may eliminate any public trust rights of the Commonwealth in the substantially land-locked former flats and submerged land lying landward of the 1980 Line.

In its treatment of land lying seaward of the 1980 Line, House No. 658 proceeds differently from its treatment of land lying landward of that line. Section 4 of proposed G. L. c. 91A declares that "[p]ublic trust rights exist with regard to all tidelands filled or unfilled in the city of Boston and seaward of the 1980 Line." It further states that "[a]ll

---

[4] The second definition of vestigial rights in House No. 658 reads as follows: "'Vestigial rights,' rights which have been or are hereafter created by or may be implied from the common law, any grant, charter, license, deed, special or general act, or other instrument, by the commonwealth or any political subdivision, independent agency or body politic and corporate thereof or any predecessor of any of them in waters or tidelands of the commonwealth which rights have not been expressly set forth as a condition, restriction, or limitation on use in the dispositive provisions of such instrument."

existing uses of such property may continue unaffected by this statute." We construe this statement as neutral with respect to existing uses and not as an indorsement of existing uses as proper in light of any public trust rights that may be applicable to particular premises.

Public trust rights are defined in proposed § 3 as "legal rights held in trust by the Commonwealth for the people." Certain categories of rights are stated to be included within public trust rights.[5] No distinction is made between rights held by the Commonwealth as trustee for the people in submerged land and such rights in flats. As to flats, the stated public trust rights may exceed the scope of such rights now in existence within the Commonwealth. See *Opinion of the Justices*, 365 Mass. 681, 687-690 (1974). We are in doubt whether public trust rights, as defined in proposed § 3, are intended to include any rights in flats. As to submerged lands, the definition of those rights may exceed the scope of rights of the public and the Commonwealth within the principles laid down in the *Boston Waterfront* case. In short, we are in doubt whether proposed G. L. c. 91A is intended to create new rights in the public and in the Commonwealth as to tidelands or whether it is only intended to characterize existing rights.

If proposed G. L. c. 91A is intended to create new rights in the public and in the Commonwealth, issues arise that are neither expressly contemplated by the questions propounded to us nor discussed in the many briefs filed with us. Proposed § 4 provides that a record owner of an interest in tidelands lying seaward of the 1980 Line may change or expand an existing use or develop an undeveloped area only

---

[5] The definition of public trust rights in proposed § 3 reads as follows:

"'Public Trust Rights', legal rights held in trust by the Commonwealth for the people. These include the following categories of rights: —

"1) navigation;

"2) access for water-related recreation including, but not limited to, boating, fishing and clamming, swimming, sunbathing and walking;

"3) commercial activity and development which enures primarily to public rather than private benefit;

"4) conservation of resources and the natural environment."

when, after appropriate application and a public hearing, the Secretary of the Executive Office of Environmental Affairs issues a public interest permit, following the making of certain determinations and findings.[6] Section 5 of proposed G. L. c. 91A states that the Secretary's decisions are reviewable under G. L. c. 30A, the State Administrative Procedure Act, but does not make the proceedings themselves subject to that act.

As a new form of regulatory control over the use of certain land in Boston, proposed G. L. c. 91A presents certain issues alluded to, if at all, only generally by the questions propounded to us. As a regulation applicable only to the city of Boston, there may be a question of the power of the Legislature to act, without complying with the provisions of the Home Rule Amendment (art. 89 of the Amendments to the Constitution of the Commonwealth). Further, there is the question of the reasonableness of the proposed regulation in relation to the private interests of particular landowners. As a regulation of land uses, the public interest may well justify various controls. As an attempt to redefine ownership interests, in effect increasing public ownership rights in relation to existing ownership rights, proposed G. L. c. 91A raises the question whether an uncompensated taking of property is involved. See *Opinion of the Justices,*

---

[6] Proposed § 4 provides in this respect as follows: "The Secretary shall issue a Public Interest Permit if the Secretary determines upon written findings supported by substantial evidence that the change or expansion of use or the development of an undeveloped area: —

"1) would not diminish control by public bodies of the attributes of the property in which the public has an interest, and

"2) would not diminish public rights, access and use and

"3) if there is a change in use that benefits one category of public right at the expense of another,

"(a) the loss of the former public right will be negotiable [*sic*] compared to the greater benefit afforded to the public by the change, and

"(b) the category of public right diminished will not significantly effect [*sic*] the total availability of such benefit in the immediate area.

"The Secretary shall impose such written conditions on Public Interest Permits as are necessary to insure that these standards are met, or otherwise to protect Public Trust rights."

365 Mass. 681, 690-691 (1974). There may be a question of the appropriateness of making distinctions in this regard between certain land lying seaward of the 1980 Line and other land lying landward of the 1980 Line. Our subsequent discussion of proposed § 4 will proceed on the assumption, apparently inherent in all the briefs filed with us, that proposed G. L. c. 91A does not intend to expand the interests of the public and of the Commonwealth in tidelands beyond those that currently exist under the law of the Commonwealth. Thus, we shall view § 4 as designed to protect those existing interests in situations where a record owner of tideland seaward of the 1980 Line proposes a change of use, an expansion of use, or new use of such property.

Proposed § 4 has sufficient standards to guide the Secretary in making determinations concerning applications for public interest permits. See n.6 above. In our advisory opinion delivered today concerning Senate No. 1001, we have set forth the limitations that apply on the scope of the Secretary's authority. *Opinion of the Justices, supra* at 912-913. We also set forth there the principles of law concerning the delegation of legislative power to an administrative board or official. *Id.* at 913-914. We conclude that, in light of these principles, the standards to guide the Secretary are constitutionally adequate to define the limits of his exercise of the authority that would be delegated to him by House No. 658.

### The Six Questions

*Questions One and Two.* For the reasons stated in our advisory opinion concerning Senate No. 1001, as to substantially identical questions, we respectfully ask to be excused from answering questions one and two.

*Question Three.* In our answer to a similar question, similarly numbered, in our advisory opinion concerning Senate No. 1001, we noted that the question presented no specific point. *Opinion of the Justices, supra* at 916.

In general terms, in light of the discussion set forth earlier, we can state that in the relinquishment of the Com-

monwealth's residual interests in tidelands in Boston lying landward of the 1980 Line, the bill, as construed by us, if enacted into law, would not contravene due process of law guarantees of the Fourteenth Amendment to the Constitution of the United States or art. 10 of the Declaration of Rights. Equal protection guarantees depend on factual circumstances not presented to us. The classifications made by the 1980 Line and the limitation of the act to tidelands in the city of Boston, however, are not on their face arbitrary or irrational. *Pinnick* v. *Cleary*, 360 Mass. 1, 28 (1971).

We answer question three in the negative in general terms as to due process of law considerations applicable to tidelands lying landward of the 1980 Line. For the reasons stated in our response to questions one and two, we beg to be excused from answering it as to tidelands lying seaward of the 1980 Line and as to equal protection principles.

*Question Four.* In view of our previous discussion of the applicable principles of law and of the provisions of the proposed act, the bill, if enacted into law, would not exceed the powers of the General Court and, therefore, would not be in contravention of Part II, c. 1, § 1, art. 4 of the Constitution of the Commonwealth to make "all manner of wholesome and reasonable . . . laws." We have expressed concerns about the proper interpretation of the scope of certain portions of the proposed act. But, subject to these concerns, we answer question four, "No."

*Question Five.* For the reasons given in our answer to an identical question, similarly numbered, in our advisory opinion concerning Senate No. 1001 (see *Opinion of the Justices, supra* at 917-919), we answer question five, "Yes," as to the disposition of any land or easement.

*Question Six.* Question six concerns the application of art. 97 of the Amendments, and of art. 30 of the Declaration of Rights concerning the separation of powers. It asks whether House No. 658 is "an unlawful delegation of legislative power and responsibility to regulate the public trust over certain tidelands in violation of Article XCVII [art. 97 amending art. 49] or Article XXX of Part the First of the Constitution of the Commonwealth."

House No. 658 sets forth a proper legislative policy. The details of implementation of that policy are left to the Secretary of the Executive Office of Environmental Affairs. The standards under which the secretary must act are reasonably apparent from the definition of public purpose (see proposed § 3), the definition of public trust rights (see proposed § 3), from the declared purposes of the bill (see proposed § 1), and from the specific findings required of the Secretary before a change or expansion in use may be permitted (see proposed § 4). We conclude, in light of these principles, that the standards to guide the Secretary are constitutionally adequate to define the limits of his exercise of the authority that would be delegated to him by House No. 658.

We see no limitation in art. 97 on the right of the Legislature to delegate to an administrative official or agency the authority to make determinations concerning lands and easements taken or acquired for the purposes stated in art. 97, provided the delegating act both sets forth clearly the legislative purpose and policies and provides reasonable standards to be applied.

We answer question six, "No."

### Conclusion

We beg to be excused from answering questions one and two.

Our answer to question three is, "No," in general terms as to due process of law considerations applicable to tidelands lying landward of the 1980 Line. We beg to be excused from otherwise answering question three.

Our answer to question four is, "No," subject to the concerns expressed in our discussion.

Our answer to question five is, "Yes," but only as to the disposition of any land or easement within the scope of art. 97 of the Amendments.

Our answer to question six is, "No."

The foregoing answers and opinions are submitted by the Chief Justice and Associate Justices subscribing hereto on the 18th day of June, 1981.

Justices Liacos and Abrams have subscribed hereto, subject to the reservations they express in their separate opinion accompanying the advisory opinion of the Justices contemporaneously submitted to the Senate as to the constitutionality of Senate No. 1001.

EDWARD F. HENNESSEY
ROBERT BRAUCHER
HERBERT P. WILKINS
PAUL J. LIACOS
RUTH I. ABRAMS
JOSEPH R. NOLAN
NEIL L. LYNCH