## NORWOOD HOSPITAL *vs.* COMMISSIONER OF PUBLIC WELFARE.

Suffolk. January 5, 1994. - February 10, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Medicaid. Alien. Hospital,* Medicaid reimbursement. *Administrative Law,* Agency's interpretation of regulation. *Words,* "Emergency medical condition."

A Superior Court judge correctly determined there was substantial evidence to support a decision of a hearing officer in the Department of Public Welfare that an undocumented alien who was a patient in a hospital for about seven weeks until her death was not eligible for medical assistance under the Medical Care and Assistance Program, G. L. c. 118E, because she was not treated for an "emergency medical condition" as defined in 106 Code Mass. Regs. § 507.600 (recodified November 1, 1993, as 130 Code Mass. Regs. § 507.600). [56-59]

CIVIL ACTION commenced in the Superior Court Department on January 16, 1991.

The case was heard by *Hiller B. Zobel,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph A. Robinson* for the plaintiff.

*Margaret Monsell,* Assistant Attorney General, for the defendant.

ABRAMS, J. Pursuant to G. L. c. 30A, § 14 (1992 ed.), Norwood Hospital (hospital) appealed from a decision of the Department of Public Welfare (department) that Mary Addley, an undocumented alien, who was a patient at the hospital until her death, was not eligible for medical assistance. The department determined that, under the Medical Care and Assistance Program, G. L. c. 118E (1992 ed.), Addley was not treated for an "emergency medical condition" as

that term is defined in 106 Code Mass. Regs. § 507.600 (Mar. 1, 1993).[1] A Superior Court judge affirmed the department's determination and entered judgment for the department. The hospital appeals. We transferred the appeal to this court on our own motion. We affirm.

1. *The facts.* Addley, a citizen of Ireland born in 1926, came to the United States in 1987 on a six-month visitor's visa. After this visa expired in 1988, Addley remained in this country without a valid visa. On or about January 29, 1990, at approximately 10 A.M., Addley appeared at the hospital's emergency room and said that she had been experiencing difficulty in walking for approximately three months. Hospital personnel noted that Addley's skin and her eyes were yellow and her abdomen was distended. After conducting several routine tests on Addley, the attending physician admitted her to a semi-private room. After her admission, Addley's physician noted her diagnosis as follows. "Initial appearance is alcoholic liver disease with cirrhosis, ascites, hepatic encephalopathy, coagulopathy, possible hepatorenal syndrome."[2]

On February 8, 1990, after consultation with Addley's son, a physician entered a "do not resuscitate" order that instructed the hospital staff to refrain from taking life-prolonging measures with respect to Addley. On March 27, 1990, Addley died from hepatic and renal failure.

---

[1] Effective November 1, 1993, 106 Code Mass. Regs. § 507.600 appears in the regulations of the division of medical assistance at 130 Code Mass. Regs. § 507.600.

[2] Cirrhosis is a "progressive disease of the liver" associated "with failure in the function of hepatic cells and interference with blood flow in the liver, frequently resulting in jaundice, portal hypertension and ascites." Stedman's Medical Dictionary 283 (5th ed. 1982).

Ascites is "an accumulation of serous fluid in the peritoneal cavity." Stedman's Medical Dictionary, *supra* at 129.

Hepatic encephalopathy is a "disease of the brain . . . associated with cirrhosis of the liver." Stedman's Medical Dictionary, *supra* at 461.

Coagulopathy is "[a] disease affecting the coagulability of the blood." Stedman's Medical Dictionary, *supra* at 292.

Hepatorenal syndrome is a progressive kidney disorder with no apparent anatomic abnormality in the kidney, usually occurring in hepatitis or advanced cirrhosis with ascites. Merck Manual 887 (16th ed. 1992).

On April 23, 1990, the Norwood office of the department denied the application for medical assistance which the hospital filed on Addley's behalf shortly before her death on the ground that she was neither a United States citizen nor a lawfully-admitted alien residing in the United States under color of law. See 106 Code Mass. Regs. § 503.200 (A) (1) and (2) (Mar. 1, 1993). The hospital appealed from this denial to the department's division of hearings officers pursuant to G. L. c. 118E, § 22 (1992 ed.), and 106 Code Mass. Regs. §§ 343.100 et seq. (Mar. 1, 1993). The hospital contended that, notwithstanding Addley's status as an undocumented alien, she was eligible for medical assistance pursuant to 106 Code Mass. Regs. § 507.600, because she was admitted for treatment of an "emergency medical condition." The hearing officer determined that Addley's condition did not satisfy the criteria for an "emergency medical condition" under 106 Code Mass. Regs. § 507.600. The hospital appealed from that determination to the Superior Court, contending that the department's interpretation of what constituted an "emergency medical condition" under 106 Code Mass. Regs. § 507.600, was improper. The Superior Court affirmed the department's decision.

2. *The validity of the department's determination that the hospital did not treat Addley for an "emergency medical condition" as that term is defined in 106 Code Mass. Regs. § 507.600.* The department denied the application for medical assistance which the hospital filed on behalf of Addley on the ground that her condition did not constitute an "emergency medical condition" as that term is defined in 106 Code Mass. Regs. § 507.600,[3] which requires the State to enforce

---

[3]Title 106 Code Mass. Regs. § 507.600 provides in pertinent part: "(A) *Eligibility Requirements.*

"(1) Aliens who are not eligible for Medical Assistance, in accordance with [§] 503.200 (A) (1) and (2), are eligible for care and services necessary for the treatment of an emergency medical condition if both requirements in (1) and (2), below, are met.

"(a) The alien has a medical condition (including labor and delivery) manifesting itself by acute symptoms of sufficient severity (including se-

42 U.S.C. § 1396b (v) (1988).[4] To qualify as an "emergency medical condition" under either 106 Code Mass. Regs. § 507.600 or its Federal counterpart, an undocumented alien's medical condition must be so severe that "the absence of *immediate* medical attention could reasonably be expected to *result in*: i. placing the [alien's] health in serious jeopardy; ii. serious impairment of bodily functions; or iii. serious dysfunction of any bodily organ or part" (emphasis added).

The department does not dispute that Addley was seriously ill when she sought and received treatment from the hospital. However, the department contends that the language of 106 Code Mass. Regs. § 507.600 does not permit it to determine that an undocumented alien has an "emergency medical condition" based solely on the fact that the undocumented alien is seriously ill or has a serious chronic illness. If it did, the department observes, any undocumented alien with a serious medical condition would be deemed eligible for medical assistance regardless of whether "the absence of

---

vere pain) such that the absence of immediate medical attention could reasonably be expected to result in:

"i. placing the patient's health in serious jeopardy;

"ii. serious impairment of bodily functions; or

"iii. serious dysfunction of any bodily organ or part."

[4]Title 42 U.S.C. § 1396b (v) (1988), provides in pertinent part:

"(1) Notwithstanding the preceding provisions of this section, except as provided in paragraph (2), no payment may be made to a State under this section for medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law.

"(2) Payment shall be made under this section for care and services that are furnished to an alien described in paragraph (1) only if

"(A) such care and services are necessary for the treatment of an emergency medical condition of the alien . . .

"(3) For purposes of this subsection, the term 'emergency medical condition' means a medical condition (including emergency labor and delivery) manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in

"(A) placing the patient's health in serious jeopardy,

"(B) serious impairment to bodily functions, or

"(C) serious dysfunction of any bodily organ or part."

*immediate* medical attention could reasonably be expected to *result in* placing the [alien's] health in serious jeopardy" (emphasis added). The department argues that the language of 106 Code Mass. Regs. § 507.600 does not permit that result.

The department interprets 106 Code Mass. Regs. § 507.600 as providing that an undocumented alien only will be deemed to have an "emergency medical condition" if the absence of *immediate* medical attention could reasonably be expected to *result in* placing the alien's health in serious jeopardy. The department asserts that 106 Code Mass. Regs. § 507.600 requires it to determine that an alien does not possess an "emergency medical condition" if the absence of *immediate* medical attention could not reasonably be expected to *result in* placing the alien's health in serious jeopardy because the alien's bodily functions have already been seriously impaired. Pursuant to its interpretation of 106 Code Mass. Regs. § 507.600, the department concluded that Addley did not possess an "emergency medical condition" because her "chronic alcoholism had [so] compromised her liver and . . . central nervous system . . . before she appeared at [the hospital] . . . that the lack of *immediate* medical attention would not have *resulted in* more serious jeopardy to her health" (emphasis added).[5]

We have said that "an agency's interpretation of its own rule is entitled to great weight," *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478 (1976), and that it should only be overturned if it is "arbitrary or unreasonable." *Boston Preservation Alliance, Inc.* v. *Secretary of Envtl. Affairs*, 396 Mass. 489, 498 (1986). The department's

---

[5]The department's determination that Addley did not possess an "emergency medical condition" was based on the findings of its hearing officer. The hearing officer's findings were based largely on the testimony of Dr. Richard Cohen, who, after reviewing the medical records in question, testified that Addley "was chronically sick for a long time. I don't think it mattered . . . whether she came into the hospital that day or a week later. I think the outcome would have probably been the same. . . . She [had] a serious impairment of bodily functions before she came into the hospital."

interpretation of 106 Code Mass. Regs. § 507.600[6] was neither arbitrary nor unreasonable. There was no error in the Superior Court's determination that there was substantial evidence to support the department's decision that the hospital did not treat Addley for an "emergency medical condition."

*Judgment affirmed.*

---

[6]The department argues that, in addition to 106 Code Mass. Regs. § 507.600, the question whether Addley is eligible for medical assistance should be considered in light of 42 C.F.R. § 440.255 (c) (1) (1990), which limits medical assistance to undocumented aliens to circumstances in which the emergency medical condition has a "sudden onset." 55 Fed. Reg. 36,813, 36,816 (1990). However, 42 C.F.R. § 440.255 (c) (1) did not take effect until October 9, 1990, more than eight months after the hospital decided to treat Addley and more than six months after that treatment ended. Because 42 C.F.R. § 440.255 (c) (1) had no legal effect during the period in which the hospital treated Addley, its "sudden onset" provision is inapplicable to the question whether the hospital treated Addley for an "emergency medical condition."