KEVIN A. MORRIS *vs.* COMMONWEALTH.

Suffolk. May 4, 1992. - June 16, 1992.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & GREANEY, JJ

*Motor Vehicle*, Operating under the influence. *Evidence*, Breathalyzer test. *Regulation. Administrative Law*, Agency, Regulations.

The Secretary of Public Safety, through guidelines set forth at 501 Code Mass. Regs. § 2.41 (as amended on February 13, 1992), properly delegated to the police the purely ministerial duty of periodic testing of breathalyzer machines, and that regulation was consistent with the other applicable regulation, 501 Code Mass. Regs. § 2.37, and with the enabling statute, G. L. c. 90, § 24K. [864-866]

The "periodic testing" requirement of 501 Code Mass. Regs. § 2.41 and G. L. c. 90, § 24K, is met by the calibration standard analysis conducted each time a breathalyzer machine is used, in accordance with that regulation and statute. [866-867]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 25, 1992.

The case was reported by *Greaney*, J.

*Peter K. Binder* (*Nancy M. Binder* with him) for Kevin A. Morris.

*Michael E. Donnelly*, Assistant Attorney General, for the Commonwealth.

*Scott Harshbarger*, Attorney General, & *Stanley E. Adelman*, Special Assistant Attorney General, for the Secretary of Public Safety, amicus curiae, submitted a brief.

ABRAMS, J. Kevin A. Morris (defendant) was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor, and speeding. At the time of his booking, he submitted to a breathalyzer test which produced a reading of 0.14. At arraignment, the Commonwealth moved to suspend his driver's license under G. L. c. 90,

§ 24N (1990 ed.).[1] The defendant moved for a hearing to determine whether the Commonwealth had complied with the requirements of the periodic testing program for breathalyzer machines set forth in G. L. c. 90, § 24K (1990 ed.), and the regulations promulgated thereunder. Following a full evidentiary hearing, the District Court judge ruled that the Commonwealth had demonstrated the existence of, and compliance with, the periodic testing program. The judge therefore ordered the defendant to surrender his license for ninety days, but stayed the suspension while the defendant sought appellate relief. The defendant filed a complaint pursuant to G. L. c. 211, § 3 (1990 ed.), in the Supreme Judicial Court for the county of Suffolk. The defendant's complaint alleged that his license should not be taken because the Commonwealth had not complied with the requirements of the periodic testing program and unlawfully had delegated the requirement of periodic testing to the police. The single justice reserved and reported the matter to the full court. For the reasons stated in this opinion, we conclude that there was no error in the District Court judge's conclusion that the Commonwealth had complied with the requirements of the periodic testing program.

In *Commonwealth* v. *Barbeau*, 411 Mass. 782, 786 (1992), we held that "prior to the admission of a breathalyzer result, the Commonwealth must prove the existence of, and compliance with, the requirements of a periodic testing program," in accordance with G. L. c. 90, § 24K,[2]

---

[1]Under G. L. c. 90, § 24N (1990 ed.), in cases like this one where the defendant is charged with operating under the influence, if the Commonwealth makes the necessary showing at arraignment, "the judge, in addition to any other terms of bail or recognizance, shall immediately suspend the defendant's license or right to operate a motor vehicle . . . until the disposition of the offense for which said defendant is being prosecuted," but in no case for more than ninety days.

[2]General Laws c. 90, § 24K (1990 ed.), reads, in relevant part: "The secretary of public safety shall promulgate rules and regulations regarding satisfactory methods, techniques and criteria for the conduct of such [breathalyzer] tests, and shall establish a statewide training and certification program for such breath testing devices . . . ."

and regulations promulgated thereunder. In response to *Barbeau,* the Secretary of Public Safety (Secretary) established guidelines for a periodic testing program. The guidelines provide, among other things, that the police shall be responsible for testing breathalyzers, and that each mandatory calibration of a breathalyzer prior to its use[3] "shall be deemed to be a test of such device." 501 Code Mass. Regs. § 2.41, as amended on February 13, 1992.[4]

The defendant contends that these guidelines conflict with requirements set out in G. L. c. 90, § 24K, and regulations

[3]General Laws c. 90, § 24K, mandates that, among other things, a simulated test, or "calibration standard analysis," be performed in order for a test to be valid. These simulations, using solutions with a known alcohol content, are designed to test the accuracy of the breathalyzer unit. See generally *Commonwealth* v. *Neal,* 392 Mass. 1 (1984).

[4]The full text of the amended 501 Code Mass. Regs. § 2.41 reads as follows: "(1) For purposes of [these regulations], every calibration standard analysis of a breath testing device, as conducted pursuant to 501 [Code Mass. Regs. §] 2.56, shall be deemed to be a test of such device.

"(2) The officer in charge, as defined in 501 [Code Mass. Regs. §] 2.54, will change the simulator solution in accordance with the guidelines for storage, handling and replacement of simulator solutions as defined in 501 [Code Mass. Regs. §] 2.43.

"(3) When changing the simulator solution, the officer in charge shall run five calibration standard analyses. In order to be valid the test results must be 0.14%, 0.15%, or 0.16%. Any third or subsequent decimal places are to be truncated.

"(4) The test results will be recorded as Calibration Records in the third section of the maintenance and use log as required by 501 [Code Mass. Regs. §] 2.54.

"(5) If the solution is changed and results obtained are not 0.14%, 0.15%, or 0.16% the instrument must be recertified by the Office of Alcohol Testing before it can be used for further evidentiary tests.

"(6) The officer in charge shall semiannually submit to the Director of the Office of Alcohol Testing copies of records indicating compliance with 501 [Code Mass. Regs. §] 2.41 (1), (2), (3), and (4). After reviewing the submitted records, the Director of the Office of Alcohol Testing shall issue a certificate, valid for six months, indicating the breath testing device is in compliance with 501 [Code Mass. Regs. §] 2.41.

"(7) For testing conducted prior to January 1, 1993, compliance with the requirements of 501 [Code Mass. Regs. §] 2.41 may alternatively be documented by records of calibration standard analyses appearing in the Calibration Section of the Maintenance and Use Log as required by 501 [Code Mass. Regs. §] 2.54, indicating test results of 0.14%, 0.15%, or 0.16%, truncating any third or subsequent decimal place."

promulgated thereunder, and therefore are invalid. The defendant argues that the Secretary has no authority to delegate responsibility for the periodic testing of breathalyzers to the police. Section 2.37 of 501 Code Mass. Regs. states that "[t]he Office of Alcohol Testing [OAT][5] shall be responsible for (a) the annual certification and recertification of infrared breath testing devices and simulators; (b) the periodic testing and inspection of infrared breath testing devices and simulators . . . ." According to the defendant, the responsibility for conducting the periodic tests therefore belongs solely to OAT or other members of the Secretary's department. The defendant also argues that the new guidelines, in failing to define a fixed period or regular interval at which the testing must occur, violate the statutory and regulatory mandate for periodic testing.[6] We reject both of the defendant's contentions.

1. *Delegation of responsibility for periodic testing.* We note at the outset that the defendant has a heavy burden to meet in attacking the validity of the new guidelines. See *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 206 (1981); *Massachusetts Nurses Ass'n* v. *Board of Registration in Nursing*, 18 Mass. App. Ct. 380, 389 (1984). A regulation is invalid if it conflicts with the authorizing statute. *Boylston Dev. Group, Inc.* v. *22 Boylston St. Corp.*, ante 531, 539 (1992). In this case, however, § 2.41 is not in conflict with, but consistent with the enabling statute and the other applicable regulation, 501 Code Mass. Regs. § 2.37. General Laws c. 90, § 24K, expressly mandates that the Secretary formulate all breathalyzer regulations. In requiring the police to conduct the periodic testing, the amended 501 Code Mass. Regs. § 2.41 reasonably satisfies the legislative goal of ensuring the accuracy of the tests. The regulation recognizes that it is simply not possible for OAT representatives personally to conduct the mandated calibra-

[5]OAT is a division within the Department of Public Safety crime laboratory established by 501 Code Mass. Regs. § 2.36.

[6]We stated in *Barbeau, supra* at 785, that "the statute and regulations mandate . . . a periodic testing program."

tion standard analysis on each occasion on which a breathalyzer reading is taken in Massachusetts.[7] See *Scofield v. Berman & Sons,* 393 Mass. 95, 100 (1984) (where agency vested with broad authority to promulgate regulations which fulfil purposes of enabling legislation, regulation is valid if it relates reasonably to objectives of enabling legislation), appeal dismissed, 469 U.S. 1201 (1985); *Brooks v. Architectural Barriers Bd.,* 14 Mass. App. Ct. 584, 589 (1982) (Legislature's broad grant of power to agency to frame regulations "implies discretion concerning how to carry out a new legislative program with reasonable flexibility . . . , giving suitable weight to the personnel and resources available . . ."). "It is more or less elementary that . . . an administrative agency . . . can delegate the performance of administrative and ministerial duties and, where it is impossible for them to be performed in person, it must do so." *Krug v. Lincoln Nat'l Life Ins. Co.,* 245 F.2d 848 (5th Cir. 1957). See *Foss v. Wexler,* 242 Mass. 277, 282 (1922) (license issued by street commissioners is not invalid because signature of commissioners made by duly authorized agent with rubber stamp). Cf. *Sodekson v. Lynch,* 298 Mass. 72, 74 (1937) (where there are number of stairways, building inspector's designating stairway as "main" one "might involve a considerable exercise of judgment and discretion" and hence is not mere ministerial act); *Brown v. Newburyport,* 209 Mass. 259, 266 (1911) (official duties involving exercise of discretion and judgment, unlike mere ministerial functions, cannot be delegated).

The new regulations delegate to the police only the purely ministerial duty of conducting the calibration standard analyses, a duty which involves no exercise of discretion or judgment. While the police manually perform the individual tests, the testing is regulated by the Department of Public Safety (department). The OAT, a division within the depart-

[7]Section 2.41 of 501 Code Mass. Regs. and G. L. c. 90, § 24K, both require that breath testing devices be tested and proven every time they are used. See notes 9 & 10, *infra.* See *Commonwealth v. Neal,* 392 Mass. 1, 6 (1984) (describing procedure).

ment, is responsible for certifying, testing and inspecting breathalyzer machines, as well as distributing the alcohol solution used in the machines and breathalyzer maintenance and use logs (for recording test results) to all police departments. 501 Code Mass. Regs. § 2.37. The OAT is also required to review each machine's performance semiannually. 501 Code Mass. Regs. § 2.41. Only after such a review may the OAT issue a certificate (valid for six months) which indicates that the instrument is in compliance with the periodic testing regulations. 501 Code Mass. Regs. § 2.41. We conclude that the regulations are consistent with each other and with the enabling statute.

2. *Periodic testing.* Before it was amended following our decision in *Barbeau,* 501 Code Mass. Regs. § 2.41 (1987) stated simply that "[t]he [OAT] shall devise a program for the periodic testing of certified breath testing devices and simulators"; the details of the testing program were not set forth in a written form. As amended, 501 Code Mass. Regs. § 2.41 delineates the substance of the periodic testing program. See note 4, *supra.* The defendant argues that the new regulations violate the "periodic testing" requirement of G. L. c. 90, § 24K, and 501 Code Mass. Regs. § 2.41 in that "there is no exact definition for the term 'periodic testing.'" Because the new regulations do not require the machines to be tested at "fixed intervals separated by determined periods of time," the defendant argues, they do not meet the statutory requirement of "periodic testing."[8] We do not agree. The challenged regulations require the machines to be tested and proven every time they are used.[9] The sole purpose of requiring periodic testing is to insure the accuracy

---

[8]At the *Barbeau* hearing, the State trooper who calibrated the breathalyzer used in this defendant's test testified that he calibrated the machine "at least once a month" (not necessarily at thirty-day intervals), and that he had performed the last such test on January 14, 1992. Morris was arrested February 24, 1992.

[9]Prior to running the actual test, the police are required to perform a "calibration standard analysis," and to record the results of this simulation. 501 Code Mass. Regs. § 2.41. If the simulation result does not correspond to the known alcohol content of the solution, "the instrument must

of the machines. See, e.g., *Commonwealth* v. *Neal*, 392 Mass. 1 (1984). We think that the regulations requiring testing before each use meet the legislative goals of insuring the accuracy of the breathalyzer readings, see note 3, *supra*, and are consistent with G. L. c. 90, § 24K.[10] Cf. *Boylston Dev. Group*, *supra* at 539.

The case is remanded to the Supreme Judicial Court for the county of Suffolk for entry of judgment affirming the District Court order.

*So ordered.*

---

be recertified by the Office of Alcohol Testing before it can be used for further evidentiary tests." *Id.*

[10]General Laws c. 90, § 24K, states that the "regulations [to be promulgated by the secretary] shall include . . . (a) that the chemical analysis of the breath of a person charged be performed by a certified operator using a certified infrared breath-testing device in the following sequence: (1) one adequate breath sample analysis; (2) one calibration standard analysis; (3) a second adequate breath sample analysis . . . ."